DAVID ADELSTEIN (SBN 105250)
dadelstein@bushgottlieb.com
DAVID E. AHDOOT (SBN 2451330
dahdoot@bushgottlieb.com
BUSH GOTTLIEB
A Law Corporation
500 North Central Avenue, Suite 800
Glendale, California  91203-3345
Telephone:  (818) 973-3200
Facsimile:  (818) 973-3201

Attorneys for Plaintiffs DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN AND DIRECTORS OF THE MOTION PICTURE INDUSTRY HEALTH PLAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN AND DIRECTORS OF THE MOTION PICTURE INDUSTRY HEALTH PLAN,<br><br>Plaintiffs,<br><br>vs.<br><br>NU IMAGE, INC., a California corporation<br><br>Defendant. | CASE NO. 2:14-cv-9927<br><br>**COMPLAINT TO COMPEL AUDIT ENTRY;  BREACH OF LMRA SECTION 301 CONTRACT; AND TO RECOVER UNPAID CONTRIBUTIONS PURSUANT TO THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974**<br><br>[29 U.S.C. §§ 185, 1132(g)(2) and 1145] |

Plaintiffs Directors of the Motion Picture Industry Pension Plan and Directors of the Motion Picture Industry Health Plan ("Plans ") allege:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, §502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") [29 U.S.C. §1132(e)(1)] and pursuant to Section 301(a) of the Labor Management Relations Act ("LRMA") [29 U.S.C.

1. §185(a)]. This is an action by the Directors of the Plans ("Directors") based on the failure and refusal of Defendant Nu Image Inc. to make contributions to the Plans as required by the terms of collective bargaining agreements between Nu Image Inc. and labor organizations and as required by the terms of trust agreements governing the Plans, pursuant to Section 515 of ERISA [29 U.S.C. §1145] as amended by §306(a) of the Multi-Employer Pension Plan Amendments Act of 1980 ("MPPAA"), P.L. 96-364.

2. Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in §502(f) of ERISA [29 U.S.C. §1132(f)] and Section 301(a) of the LRMA [29 U.S.C. §185(a)].

3. Venue is based on the location of the office in which the Plans are administered, which is located in the Central District of California. As such, venue is appropriate pursuant to §502(e)(2) of ERISA [29 U.S.C. §1132(e)(2)].

## PARTIES

4. The Directors are fiduciaries who administer the assets of the Plans. The Plans are "employee welfare benefit plans" and "employee pension benefit plans" within the meaning of §3(1) and (2)(A) of ERISA, [29 U.S.C. §1002(1) and (2)(A)] in that they were created pursuant to written declarations of trust ("Trust Agreements") between the International Alliance of Theatrical Stage Employees ("IATSE") and certain other applicable labor organizations, and motion picture and television producer employers ("Producers"), and are maintained for the purpose of providing their participants and beneficiaries with medical, surgical and hospital benefits in the event of sickness, accident, disability or death, and retirement benefits. The Plans were created and now exist pursuant to § 302(c) of the Labor Management Relations Act [29 U.S.C. §186(c)]. The Directors are "fiduciaries" within the meaning §3(21)(A) of ERISA, [29 U.S.C. §1002(21)(A)], half of whom have been appointed by the Producers and half of whom have been appointed by IATSE, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and

Helpers of America, Local 399 and other applicable labor organizations (collectively, "Unions"). The Directors have an obligation to protect the Plans' assets including ensuring that employers properly remit pension and health contributions to the Plans as required under collective bargaining agreements between the Unions and Defendant Nu Image, Inc. ("Defendant" or "Nu Image"). Under the Trust Agreements, the Directors have control and authority over the Plans, including the authority to file actions such as the present case to protect the Plans' trust assets.

5. The Plans are "multi-employer plans" within the meaning of §3(37)(A) of ERISA [29 U.S.C. §1002(37)(A)], in that more than one employer is required to contribute to the Plans and the Plans are maintained pursuant to collective bargaining agreements between the Unions and multiple motion picture and television producers.

6. At all times material herein, the Unions have been labor organizations representing employees in the motion picture and television business which is an industry affecting commerce within the meaning of LMRA §302 [29 U.S.C. §186].

7. Nu Image at all times relevant herein is and has been a corporation organized and existing under the laws of the State of California with its principal place of business in the State of California, and is an "employer" within the meaning of § 3(5) of ERISA, [29 U.S.C. § 1002(5)] and §501 of the LMRA, [29 U.S.C. § 142]. As such, Nu Image is also an "employer" as that term is used in §301(a) of the LMRA [29 U.S.C. §185(a)].

## COMMON FACTS

8. Beginning in May 2006, Nu Image entered into a series of written agreements (the "Guarantee Agreements") with the IATSE pursuant to which Nu Image agreed that if it made a motion picture using one of its controlled entities, Nu Image would cause the controlled entity to sign the then current IATSE-Producer Basic Agreement ("Basic Agreement"). Pursuant to the Guarantee Agreements, Nu

Image also agreed to guarantee the obligations of its controlled entity under the Basic Agreement, including but not limited to the obligation to pay the contributions to the Plans required by Articles XIX and XXVIII of the Basic Agreement.

9. Beginning in May of 2006, Nu Image also signed written Trust Acceptances and Agreements of Consent (collectively, "Trust Agreements"), in which Nu Image agreed to be bound to the terms of the Declarations of Trust governing the Plans. The 2006 Guarantee Agreement and the Trust Agreements are attached hereto as Exhibits A and B, respectively. Nu Image has since executed various IATSE and Plan signatory documentation, confirming that the terms and conditions of the Guarantee Agreement, Basic Agreement and Trust Agreements remained effective at all relevant times herein.

10. Since signing the Guarantee Agreement and Trust Agreements with the IATSE in 2006, Nu Image and many of Nu Image's controlled entities ("Controlled Entities") have produced motion pictures pursuant to the Basic Agreement and Trust Agreements including, but not limited to, the following motion pictures (the "Picture" or "Pictures") listed below:

*As I Lay Dying*

*Bad Lieutenant: Port of Call New Orleans*

*Beyond a Reasonable Doubt*

*Blonde Ambition*

*Big Wedding*

*Brooklyn's Finest*

*Cleaner, The*

*Code, The a.k.a. Thick as Thieves*

*Cool Dog*

*Day of the Dead*

*Drive Angry*

*Eliza Graves*

1. *Expendables, The*
2. *Expendables 2, The*
3. *Expendables 3, The*
4. *Garden of Last Days*
5. *Hercules*
6. *Homefront*
7. *Homeland Security a.k.a. My Mom's New Boyfriend*
8. *Iceman, The*
9. *Killing Season*
10. *King of California*
11. *Labor Pains*
12. *Leaves of Grass*
13. *Lovelace*
14. *Mad Money a.k.a New Orleans*
15. *Major Movie Star  a.k.a. Private Valentine: Blonde & Dangerous*
16. *Medallion*
17. *Mechanic, The*
18. *Microwave Park  a.k.a. Streets of Blood*
19. *Ninja II*
20. *Olympus Has Fallen*
21. *Paperboy, The*
22. *Playing For Keeps*
23. *Rampart*
24. *Righteous Kill*
25. *Solitary Man           .*
26. *Son of No One*
27. *Straight A's*
28. *Stolen*

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

512440.3  11011-19033

1 *Stone*

2 *Texas Chainsaw 3D*

3 *Til Death  a.k.a. Until Death*

4 *Trespass*

5 *Trust*

6 *Wicker Man*

7    11.    At all times material herein, Nu Image has been obligated to comply with the terms and provisions of the Basic Agreement and Trust Agreements with respect to each of the Pictures.

10    12.    Pursuant to the Guarantee Agreements, project agreements applicable to each Picture (collectively, "Project Agreement"), the Basic Agreement and Trust Agreements, the Controlled Entities and Nu Image are under an obligation to make certain monetary contributions to the Plans based upon a percentage of the gross receipts derived from exploitation of the Pictures in the Free Television market and in the "Supplemental Markets" (including, but not limited to, pay television, videocassettes and DVDs), collectively referred to herein as "Residual Contributions."

18    13.    Pursuant to the Guarantee Agreements, Project Agreement, the Basic Agreement and Trust Agreements, and in addition to the Residual Contributions, the Controlled Entities and Nu Image are under an obligation to make certain monetary payroll contributions to the Plans based upon, with limited exception, a set dollar amount or every hour worked or guaranteed to covered employees ("Payroll Contributions") on the Pictures.

24    14.    The Directors are informed and believe, and thereon allege, that Nu Image has entered into written agreements with certain territorial distributors of the Pictures, pursuant to which those territorial distributors are licensed to exhibit the Pictures in certain domestic and foreign countries in markets including but not limited to motion picture theaters (the "theatrical market"), the free television

market and the Supplemental Markets of pay television and DVD/videocassettes. The Plans are informed and believe, and thereon allege, that pursuant to these written agreements, Nu Image received payments from these territorial distributors, in the nature of advances and/or minimum guarantees, in consideration of the license of these distribution rights of the Pictures.

15. Pursuant to Article XXVIII (b)(6) of the Basic Agreements, the Controlled Entities and Nu Image were required to advise the Plans in writing of a reasonable allocation of the payments it received from these distributors as to each of the Pictures, for the purpose of determining what portion of each such payment was properly allocated to the Free Television Market and Supplemental Market rights licensed as well as the other rights licensed by Controlled Entities and Nu Image to the distributor, and determining the portion of the payments upon which the Residual Contributions are due, and to pay the appropriate Residuals Contributions to the Plans for each Picture.

16. The Directors are informed, believe and thereon allege that the Controlled Entities and Nu Image have breached the Guarantee Agreement, Project Agreements, Basic Agreements and the Trust Agreements by failing to notify the Plans of their reasonable allocation of these payments as to each of the Pictures, by failing to make the correct payment of Residual Contributions to the Plans for each of the Pictures, and by failing to make sufficient Payroll Contributions to the Plans as to certain Pictures, in amounts to be proven at trial.

## FIRST CAUSE OF ACTION

(Compliance with Audit Obligations -

29 U.S.C. §1132(g)(2)(E))

17. The Directors incorporate by reference each allegation contained in Paragraphs 1 through 16 as though fully set forth herein.

18. Pursuant to the terms of the Basic Agreements and Trust Agreements, the Plans have the authority to conduct an audit of the books and records of

signatory employers for the purpose of determining the accuracy of Residual Contributions made to the Plans.  The Trust Agreements provide that if such an audit discloses a delinquency or underpayment, the cost of the audit shall be borne by the signatory who is found to be delinquent, and that if litigation is required to compel such an audit, the costs of such litigation are to be borne by the signatory.

19.  On or about October 1, 2014, the Plans demanded that Nu Image submit to an audit of the books and records of Nu Image and its Controlled Entities for motion pictures produced by Nu Image or its Controlled Entities for the audit period January 1, 2011 through December 31, 2014 ("Audit").  Nu Image has not provided the Plans' auditors with books and records sufficient to effectuate audit access.

20.  Because the Plans' auditors have not received all books and records necessary for the Audit, the Plans are as of yet unable to determine a final reasonable allocation for each of the Pictures and the amount of Residual Contributions owed to the Plans for each of the Pictures.

21.  29 U.S.C. §1132(g)(2)(E) authorizes the Court in any action to enforce the contribution obligation of ERISA Section 515, the Court may award the Plan such other equitable relief as the Court deems appropriate.  In accordance with the Basic Agreements and Trust Agreements, the Plans request an Order from the Court compelling Nu Image to submit to an audit of all of Nu Image's books and records for purpose of completing the Plans' residual Audit.

## SECOND CAUSE OF ACTION

(Failure to Make Pension and Health Contributions -

Violation of ERISA Section 515 (29 U.S.C. §1145)

22.  The Directors incorporate by reference each allegation contained in Paragraphs 1 through 21 as though fully set forth herein.

23.  Pursuant to the Guarantee Agreement, Project Agreements, Basic Agreement and Trust Agreements, Nu Image is responsible for complying with all

terms and conditions of the Basic Agreement and Trust Agreements with respect to the Pictures, including but not limited to, the payment of Residual Contributions for the Pictures.

24.  The Directors are informed, believe and thereon allege that Nu Image has not paid sufficient Residual Contributions to the Plans with respect to any of the Pictures, thus necessitating this litigation.

25.  The Directors are informed, believe and thereon allege that Nu Image has not paid certain Payroll Contributions to the Plans with respect to some of the Pictures, thus necessitating this litigation.

26.  By the terms of the Basic Agreements, Trust Agreements, and Title 29 U.S.C. §1132(g)(2), Nu Image agreed that in the event it failed to pay contributions to the Plans when due, it would be considered delinquent with the Plans and would pay the Plans the sum of twenty percent (20%) of the total amount then due, or interest on the amount due at the rate of twelve percent (12%) from ten (10) business days after notice of the claim, whichever is greater, as liquidated damages for each delinquency.  The Plans are informed and believe, and thereon allege, that liquidated damages are due to the Plans by Nu Image, in an amount to be established by proof at the trial herein.

27.  By the Agreements and Trust Agreements, Nu Image also agreed that in the event of any delinquency, it would pay legal and auditing costs in connection therewith, whether before or after litigation is commenced.  The Plans have incurred legal and auditing costs in conjunction with Nu Image's failure to make contributions for the Pictures, in an amount to be determined at trial.

28.  It has been necessary for the Plans to engage the law firm of Bush Gottlieb, A Law Corporation for the purpose of compelling the audit and collecting any and all contributions due from Nu Image to the Plans with respect to the Pictures.  Pursuant to the Agreements, Trust Agreements and Title 29 U.S.C.

1  §1132(g)(2), the Plans are entitled to their reasonable attorneys' fees and costs in
2  connection therewith.

3      29.    Pursuant to Title 29 U.S.C. §1132(g)(2), the Basic Agreements, and
4  Trust Agreements, Nu Image owes the Plans interest at the annual rate of twelve
5  percent (12%) on all unpaid contributions for the Pictures from the dates the sums
6  were originally due to the Plans to the date of judgment.  The Plans are informed
7  and believe, and thereon allege, that interest is due to the Plans by Nu Image, in an
8  amount to be established by proof at the trial herein.

9      30.    At all times material herein, Nu Image was under an affirmative duty,
10 pursuant to the terms of the Agreements and Trust Agreements to provide the
11 Directors, their agents and the Plans with information so that they may determine
12 whether contributions paid were proper and to pay to the Plans the correct amount of
13 fringe benefit contributions.  The Plans are informed and believe, and on that basis
14 allege, Nu Image failed to accurately report this information and pay the proper
15 contributions as to each of the Pictures.  The Plans reposed trust and confidence in
16 Nu Image and relied on Nu Image to accurately report and pay the correct amount of
17 contributions to the Plans so as to toll the statute of limitations, if applicable.

### THIRD CAUSE OF ACTION

(Violation of LMRA §301(a) (29 U.S.C. §185(a)))

21     31.    The Directors incorporate by reference each allegation contained in
22 Paragraphs 1 through 30 as though fully set forth herein.

23     32.    The Plans are intended third party beneficiaries of the Guarantee
24 Agreement, Project Agreements, Basic Agreements and the Trust Agreements
25 between the IATSE on the one hand, and Nu Image and its Controlled Entities on
26 the other.

27     33.    Nu Image and its Controlled Entities have breached the Guarantee
28 Agreement, Project Agreements, Basic Agreements and the Trust Agreements by

failing to submit to an audit of their books and records, by failing to make a reasonable allocation of payments they received from distributors with respect to the Pictures, and by failing to make sufficient Residual Contributions with respect to the Pictures.

34. As a result of these breaches of the Guarantee Agreement, Project Agreements, Basic Agreements and the Trust Agreements, the Plans have suffered damages in any amount to be proven at trial, including but not limited to unpaid payroll and Residual Contributions, interest, liquidated damages, attorneys fees and audit fees according to proof.

WHEREFORE, the Plans pray for judgment against Nu Image, as follows:

1. For an Order compelling Nu Image to submit to a complete audit of its books and records to determine the amount of Residual Contributions owed by Nu Image to the Plans with respect to each of the Pictures;

2. For unpaid pension and health contributions to the Plans in an amount to be established at trial;

3. For liquidated damages in an amount to be established at trial;

4. For interest at the rate of twelve percent (12%) on all unpaid contributions from due dates and liquidated damages according to proof;

5. For reasonable attorneys' fees and costs incurred by the Plans;

6. For costs of the audit in amounts to be proved at trial; and

7. For such additional relief as this Court deems just and proper.

DATED:  December 30, 2014         BUSH GOTTLIEB, A Law Corporation

By: */s/ David Adelstein*
    DAVID ADELSTEIN
Attorneys for Plaintiffs